UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DELOIS JOHNSON,

                              Plaintiff,

            – against –

THE CITY OF NEW YORK,

                              Defendant.

**OPINION & ORDER**

23-cv-06804 (ER)

R̲AMOS̲, D.J.:

        Delois Johnson brings this action against her employer, the City of New York

("City"), alleging that she experienced employment discrimination, a hostile work

environment, and retaliation based on her disability in violation of the Americans with

Disabilities Act ("ADA").  Doc. 19 ("Second Amended Complaint" or "SAC") ¶ 1.

        Before the Court is the City's motion to dismiss the SAC pursuant to Federal Rule

of Civil Procedure 12(b)(6).  Doc. 23.  For the reasons set forth below, the City's motion

is GRANTED as to the reasonable accommodation and hostile work environment claims,

and DENIED as to Johnson's discrimination and retaliation claims.  The City's request to

deny further amended complaints is also DENIED.

## I.    BACKGROUND

### A.  The Court Will Consider All of the Exhibits Filed by the City

        As a preliminary matter, the City asks the Court to consider seven extrinsic

documents submitted in support of their motion to dismiss:  (1) Johnson's complaint with

the New York State Division of Human Rights ("NYSDHR") dated June 22, 2022,

alleging discriminatory employment practices; (2) NYSDHR's Determination and Order

after Investigation filed February 27, 2023, finding no probable cause for Johnson's

discrimination claim and notifying Johnson of her right to request a review by the Equal

Employment Opportunity Commission ("EEOC"); (3) Dr. Ina S. Itzkovitz's note dated

April 11, 2022; (4) the letter issued by the Office of Diversity and Equal Opportunity Affairs ("EEO") denying Johnson's request for accommodation because employees were no longer required to wear face coverings while at work; (5) the New York City Department of Citywide Administrative Services' ("NYCDCAS") Directive effective on March 7, 2022, allowing the City's employees to remove their face coverings in the workplace; (6) Dr. Itzkovitz's note dated May 3, 2022; and (7) the EEO's email to Johnson dated July 21, 2022, stating her reasonable accommodation request had been approved for the period June 30 to August 30, 2022.  Docs. 24-1–7.

In adjudicating a motion to dismiss, a court may consider only the complaint, exhibits to the complaint, any statements or documents incorporated in it by reference, and documents integral to it.  *ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014) (quoting *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013)).  "To be incorporated by reference, the complaint must make a clear, definite[,] and substantial reference to the documents[.]"  *Bill Diodato Photography L.L.C. v. Avon Products, Inc.*, No. 12 Civ. 847 (RWS), 2012 WL 4335164, at *3 (S.D.N.Y. Sept. 21, 2012) (citation omitted).  And "[t]o be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint."  *Id.* (alteration in original) (citation omitted).  Thus, where a document is partially quoted in a complaint, the Court may generally consider its full text.  *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies*, Inc. 75 F.3d 801, 808 (2d Cir. 1996).  Further, "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (emphasis in original) (citation omitted).  Finally, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."  *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (citations omitted).

The Second Circuit has "largely" limited the scope of "integral" documents to "written instruments"—*i.e.*, those legal documents that, in writing, define a party's "rights, duties, entitlements, or liabilities"—as compared to evidence that merely makes a claim more or less likely. *Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) (citations omitted). But communications whose legal effect forms the basis of a cause of action may also be considered on a motion to dismiss. *See Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390, 400 (E.D.N.Y. 2015) (finding text messages submitted in support of defendant's motion to dismiss incorporated by reference and integral to the complaint).

Johnson explicitly incorporates by reference the doctor's notes of April 11, 2021 and May 3, 2022 in the SAC. SAC ¶ 12, 24. She also explicitly mentions and attaches the EEOC Right to Sue letter to her complaint. *Id*. ¶ 4; Doc. 19-1. Johnson submitted June 22, 2022 complaint to NYSDHR, so the Court may take judicial notice of the NYSDHR charge and its determination because they are "public documents filed in state administrative proceedings" and are integral to Johnson's claims. Doc. 24-1 at 1; *see Clarke v. White Plains Hosp.*, No. 13 Civ 5359 (CS), 2015 WL 13022510, at *3 (S.D.N.Y. Apr. 22, 2015) ("EEOC charge and the agency's determination are both public records, of which this Court may take judicial notice"). When discussing the April 29, 2022, denial of her request, Johnson also incorporates by reference the EEO letter denying her request and explaining that face coverings were no longer required in the workplace. SAC ¶ 25. Subsequently, the NYCDCAS Directive allowing the City's employees to remove their face coverings in the workplace, which is the reason for the EEO denial letter, and the July 21, 2022, EEO email approving that same April 2022 accommodation request are both integral to the complaint. Accordingly, the Court may properly consider all the City's proposed exhibits.

### B. Factual Background

The following facts are based on the allegations in the SAC, which the Court accepts as true for purposes of the instant motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Johnson has suffered from asthma and chronic bronchitis since at least 2003. SAC ¶ 7. Her symptoms include a chronic cough, sleep apnea, and breathing troubles. *Id.* Johnson uses a daily inhaler, occasionally takes steroids and antibiotics, and requires medical attention at least four times a year due to asthma attacks. *Id.*

In December 1984, Johnson started working at the New York City Housing Authority as a clerical associate. *Id.* ¶ 8. In November 2015, she transferred to the City of New York Human Resources Administration/Department of Social Services ("NYCHRA") as a contract specialist. *Id.* ¶ 9. On September 13, 2021, NYCHRA instituted a policy in response to the COVID-19 pandemic that required all employees to wear masks while in the office. *Id.* ¶ 11.

On December 28, 2021, due to her asthma and bronchitis, Johnson requested to be able to work remotely. *Id.* ¶ 12. Her doctor, Dr. Itzkovitz, provided a note to NYCHRA advising that if Johnson wore a face mask for periods even as short as 15 minutes, her respiratory symptoms would worsen because it impacted her ability to breathe. *Id.* On that same day, Jonson's supervisor, Jay Gorman, sought to deny her request, indicating that it was "[n]ot recommended." *Id.* ¶ 13. Johnson alleges that he did not engage in any cooperative dialogue with her. *Id.* Gorman also informed Johnson that she needed to use sick leave until NYCHRA made a final determination on her accommodation request. *Id.* ¶ 14. As a result, Johnson was required to use eight sick days that were never returned to her. *Id.*

On January 5, 2022, Johnson went to the office of NYCHRA commissioner, Gary Jenkins, to complain about the discrimination and failure to accommodate she had been experiencing. *Id.* ¶ 15. Jenkins' receptionist took Johnson's information and had Mark

Neal contact her the next day. *Id.* On January 6, 2022, Neal advised Johnson that Monique Quinones, a NYCHRA Equal Employment Opportunity ("EEO") supervisor, would call her. *Id.*

During a January 10, 2022, phone call, Johnson complained to Quinones that no one had discussed her request for a reasonable accommodation with her. *Id.* ¶ 16. Johnson further complained that she was being retaliated against by being forced to use her sick days. *Id.* On that same day, Quinones advised Johnson that NYCHRA had granted her request to work remotely until April 30, 2022, as per her doctor's recommendation. *Id.* ¶ 17.

On January 11, 2022, Gorman mistakenly informed Johnson that she could no longer use flextime while working remotely, but upon further review, he confirmed with Johnson later that same day that she was permitted to continue using flextime. *Id.* ¶ 18; Doc. 24-2 at 2.[1] Prior to requesting a reasonable accommodation for her disabilities, Johnson was permitted to use flextime like any other employee. SAC ¶ 18.

On January 19, 2022, Johnson filed a complaint with NYCHRA's EEO office about NYCHRA's discriminatory and retaliatory actions. *Id.* ¶ 19. The City interviewed Johnson but took no other action with respect to her complaint. *Id.*

On February 10, 2022, Gorman threatened to deduct pay from Johnson's time sheet, claiming she failed to timely respond to an email. *Id.* ¶ 20. However, as Johnson informed Gorman, she had technical issues and was unable to see his email. *Id.*[2] On February 14, 2022, Johnson complained to NYCHRA executive director and Gorman's supervisor, Jaclyn Moore, about the discrimination and retaliation she experienced. *Id.* ¶ 21. Johnson also asked to be transferred to a different supervisor. *Id.* Moore allegedly did not respond to the complaints or take any further action. *Id.*

---

[1] The NYSDHR investigation determined that Johnson was told that she was able to use flextime later that same day and that she did not "demonstrate[] that the delays she experienced r[o]se[] to a level of unlawful disability discrimination." Doc. 24-2 at 2.

[2] Johnson does not allege that she was actually deducted any pay.

On March 7, 2022, a New York City Department of Citywide Administrative Services' ("NYCDCAS") directive, lifting the City's facemask requirement in the workplace, became effective. Doc. 24-5.

Meanwhile, on April 11, 2022, as her accommodation to work remotely until April 30, 2022, was coming to an end, Dr. Itzkovitz advised Johnson to continue to work remotely so that she would not have to wear a face mask. SAC ¶ 22; Doc. 24-3. Specifically, Dr. Itzkovitz provided Johnson with a note recommending that she continue to work from home until August 30, 2022 ("[Johnson] has chronic bronchitis and asthma which is chronically worsened by wearing the face mask. Since this is still a requirement, I have advised and recommended that she work remotely. Ms. Johnson may return to work on 08/30/2022."). SAC ¶ 22; Doc. 24-3.

On April 25, 2022, the City sent Johnson an email that her paycheck was being canceled because Moore failed to submit Johnson's time to the timekeeper. SAC ¶ 23. Although Johnson was able to fix the issue and does not allege that her paycheck was actually canceled, she asserts that "similarly situated employees who did not suffer from a disability, and/or who did not request a reasonable accommodation or complain of discrimination, did not receive threats to have their paycheck canceled." *Id.*

On April 26, 2022, Johnson submitted the doctor's note to Quinones requesting to work remotely until August 30, 2022. *Id.* ¶ 24. On April 29, 2022, Quinones denied Johnson's request, "forcing" Johnson to use her remaining sick time or face termination. *Id.* ¶ 25. Johnson claims NYCHRA once again did not engage in an interactive process but rather told her she could appeal the request. *Id.* The City threatened that if Johnson did not return to the office, she would be terminated. *Id.* At some point, EEO informed Johnson that the denial was based on the NYCDCAS's Directive effective March 7, 2022, that masks were no longer required in the workplace. Doc. 24-4.

6

On May 4, 2022, Johnson submitted another note she received from Dr. Itzkovitz on May 3, 2022, providing further information in support of her request to continue to work remotely:

> [Johnson] has chronic bronchitis and asthma which is chronically worsened by wearing the face mask, even for periods as short as 15 minutes. This is especially troublesome on public transportation which is required for her to commute to work. Since this is still a requirement, I have advised and recommended that she work remotely. Ms. Johnson may return to work on 08/30/2022.

SAC ¶ 26; Doc. 24-6.

On May 20, 2022, Johnson requested the reasonable accommodation for remote work as the City "again increased" its requirements of having to wear a mask in the office." SAC ¶ 27.[3] On May 25, 2022, the City denied Johnson's request without engaging in a cooperative dialogue. *Id.* ¶ 28. The City required her to return to the office. *Id.*

On June 22, 2022, Johnson filed a complaint with the New York State Division of Human Rights ("NYSDHR"). Doc. 24-1. On July 21, 2022, the EEO notified Johnson that her reasonable accommodation request to work remotely had been approved for the period June 30 to August 30, 2022. Doc. 24-7.

On August 8, 2022, another supervisor at NYCHRA, Kevin Lee, offered Johnson a promotion. SAC ¶ 29. However, the City denied Johnson of the promotion, falsely claiming that she did not have the "necessary title" to qualify for the position. *Id.*[4]

On February 27, 2023, the NYSDHR dismissed Johnson's complaint and notified her of her right to request a review by the EEOC of the action. Doc. 24-2 at 3. On May 8, 2023, the EEOC decided not to proceed with the investigation and provided her with a right to sue letter. *Id.* ¶ 4. Subsequently, on August 3, 2023, Johnson filed the instant suit. Doc. 1.

---

[3] Johnson does not describe the "increased requirements" for in-office work.

[4] The complaint does not provide more information concerning the "necessary title" referred to.

On September 14, 2023, approximately one month after she filed the complaint, Gorman verbally chastised Johnson in front of six colleagues for submitting an invoice, despite the fact that the previous day Gorman himself had asked Johnson to return the same invoice for revisions.  SAC ¶ 30.  Later that month, on September 18, 2023, Gorman also improperly deleted time from Johnson's timecard, falsely claiming that it was incorrect.  *Id.* ¶ 31.[5]

On December 13, 2023, Johnson met with her direct supervisor, Mary Castellana, during the workday.  *Id.* ¶ 32.  Despite the fact that she was meeting with her supervisor, Gorman attempted to discipline Johnson for being "absent without leave" during the time she met with Castellana.  *Id.*

### C. Procedural History

Johnson filed her initial complaint against the City on August 3, 2023.  Doc. 1.  Johnson alleges the City subjected her to disparate treatment, failed to accommodate her disability, created a hostile work environment based on disability, and retaliated against her for complaining about discrimination.  *Id.* ¶ 30.  The City moved to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6) on November 27, 2023.  Doc. 8.  The Court denied this motion without prejudice for failing to comply with the Court's individual practices on November 30, 2023.  Doc. 11.  With the City's consent, Johnson filed the SAC on December 27, 2023.  Doc. 19; Doc. 19-2.  Johnson alleges that the City treated her disparately, failed to accommodate her, subjected her to a hostile work environment based on disability, and retaliated against her for her complaints about discrimination, in violation of the ADA.  SAC ¶ 33.  On February 15, 2024, The City moved to dismiss the SAC in its entirety and prevent Johnson from further amending the SAC.  Doc. 23.  On April 19, 2024, Johnson filed a supplemental brief on the applicability of *Muldrow v. City of St. Louis, Missouri*, 610 U.S. 346 (2024), on the

---

[5] Johnson does not allege that she was actually deducted any pay.

pending motion to dismiss.  Doc. 30.  The City subsequently filed a supplemental brief on

May 7, 2024.  Doc. 31.

## II.    LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.

Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at

556).  The plaintiff must allege sufficient facts to show "more than a sheer possibility that

a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 556).  However, this

"flexible plausibility standard" is not a heightened pleading standard, *In re Elevator

Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (internal quotation marks and citation

omitted), and "a complaint . . . does not need detailed factual allegations" to survive a

motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately

prevail but whether the claimant is entitled to offer evidence to support the claims."  *Sikhs

for Justice v. Nath*, 893 F.Supp.2d 598, 615 (S.D.N.Y 2012) (quoting *Villager Pond, Inc.

v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)).  Indeed, "the purpose of Federal

Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal

sufficiency of the plaintiff's statement of a claim for relief without resolving a contest

regarding its substantive merits" or "weigh[ing] the evidence that might be offered to

support it."  *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks

and citation omitted).  Thus, when ruling on a motion to dismiss pursuant to Rule

12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all

reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir.

2014).  In considering a Rule 12(b)(6) motion, a district court may also consider

"documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Doe v. N.Y. Univ.*, No. 20 Civ. 1343 (GHW), 2021 WL 1226384, at *10 (S.D.N.Y. Mar. 31, 2021) (quoting *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)).

## III.    DISCUSSION

### A.    ADA Discrimination Claim

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

Employment discrimination claims under the ADA are analyzed under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Kovaco v. Rockbestos*, 834 F.3d 128, 136 (2d Cir. 2016).  Under that framework, the plaintiff must first establish a prima facie case of discrimination.  *See McDonnell Douglas*, 411 U.S. at 802.  Once he or she establishes a prima facie case, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for its actions.  *Id.* at 802–03.  If the defendant satisfies its burden, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual.  *See id.* at 804.  Ultimately, the plaintiff will be required to prove that the defendant acted with discriminatory motivation.  *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015).  At the pleading stage, however, the facts alleged must merely "give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase" of the case.  *Id.* at 311.  The question on a motion to dismiss is whether the plaintiff has adequately pleaded a prima facie case.  *See Davis v. Goodwill Indus. of Greater New York and New Jersey, Inc.*, 15 Civ. 7710 (ER), 2017 WL 1194686, at *5 (S.D.N.Y. Mar. 30, 2017).  In order to establish a *prima facie* case of discrimination under the ADA, Johnson must demonstrate that: (1) her employer is subject to the ADA; (2) she is disabled within the meaning of the ADA; (3) she is otherwise qualified to

perform the essential functions of the job with or without reasonable accommodation; and (4) she suffered an adverse employment action because of her disability. *See Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 767 F. App'x 123, 126 (2d Cir. 2019).

The parties do not dispute the first three elements of the prima facie case (i.e., that NYCHRA is subject to the ADA, that Johnson is disabled within the meaning of the ADA, and that she could perform the essential functions of her job with reasonable accommodation.).  Instead, the City argues that Johnson's claim fails because she did not suffer an adverse employment action.  Doc. 25 at 7.

An employer's actions may be considered adverse if there is a "materially adverse change in the terms and conditions of employment." *See Solomon v. Fordham Univ.*, No. 18 Civ. 4615 (ER), 2020 WL 1272617, at *10 (S.D.N.Y. Mar. 17, 2020) (citing *Sanders v. New York City Hum. Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)).  A "materially adverse change" in the working conditions is "more disruptive than a mere inconvenience or alteration of job responsibilities." *See Solomon*, 2020 WL 1272617, at *10 (internal citation removed).  A materially adverse change may be "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id*.

Recently the Supreme Court lowered the high bar to establish an adverse action. *See Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 350 (2024).  In that case, Muldrow challenged an involuntary job transfer as sex-based discrimination in violation of Title VII of the Civil Rights Act of 1964. *Id.* at 352.  The Eighth Circuit ruled against Muldrow because she could not show the transfer caused a "materially significant disadvantage" in the "terms [or] conditions" of her employment. *Id.* at 353, 354.  The Supreme Court found for Muldrow, holding that the harm incurred does not have to be "significant. . . [o]r serious, or substantial, or any similar adjective suggesting that the

disadvantage to the employee must exceed a heightened bar." *Id.* at 355.  Instead, as long as an employee can show "some 'disadvantageous' change in an employment term or condition" the adverse action prong is met.  The Supreme Court held that as a result of the transfer, Muldrow was caused to, among other things:  (1) work with lower-ranking officials; (2) lose access to a take-home car; and (3) adopt a less regular schedule involving weekend shifts, thus leaving her "worse off." *Id.* at 351, 355.

Johnson argues that *Muldrow* supports her discrimination claims.  Doc. 30 at 1. In response, the City attempts to distinguish *Muldrow* by arguing that the use of sick days while the accommodation request was pending was necessitated by the pandemic, and that the temporary denial of remote work had no impact on the "terms or conditions" of Johnson's employment.  Doc. 31 at 1–2.

However, as the Supreme Court made clear, "[t]erms or conditions" in an employment discrimination claim cover more than the "economic or tangible" factors and applies beyond a "narrow contractual sense." *Muldrow*, 601 U.S. at 354, 355.  It is intended to "strike at the entire spectrum of disparate treatment of men and women in employment." *See Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 144 (E.D.N.Y. 2013).  Like Muldrow, who suffered adverse actions as a result of her transfer, Johnson experienced a loss that left her "worse off." *See Muldrow*, 601 U.S. at 354, 355. Specifically, she lost "material benefits" by having to use eight days of her sick leave, which she would not have had to use if her reasonable accommodation requests had been approved in a timely manner. *See id.* at 352.[6]

Accordingly, the City's motion to dismiss Johnson's ADA discrimination claim is denied.

---

[6] Because the loss of her sick days alone is sufficient to establish a prima facie case for employment discrimination, the Court does not discuss at this juncture whether the promotion she was denied impacted the "terms or conditions" of her employment.

### B.  Reasonable Accommodation Claim

To successfully state a discrimination claim for failing to provide reasonable accommodation, a plaintiff must establish:  (1) the employer must be subject to the statute under which the claim is brought; (2) the individual has a disability under the statute; (3) the individual could perform the essential functions of the job with or without the reasonable accommodation; and (4) the employer had notice of their disability and failed to provide an accommodation.  *See Perkins v. City of New York*, No. 22-196-CV, 2023 WL 370906, at *3 (2d Cir. Jan. 24, 2023).  Additionally, to demonstrate that a delay in accommodation violated the ADA, a plaintiff must show that the delay was attributed to "discriminatory intent."  *See Hamedl v. Verizon Communications, Inc.*, 557 F. App'x 68, 70 (2d Cir. 2014).

Johnson submitted two accommodation requests, one in December 2021 ("First Request"), and the other in April 2022 ("Second Request"), and then appealed the denial of the Second Request in May 2022 ("Appeal").  SAC ¶¶ 12, 24, 27.

While the First Request, made on December 28, 2021, along with Johnson's doctor's note ("First Doctor's Note"), was initially "[n]ot recommended" by Gorman, it was eventually granted.  SAC ¶ 13; Doc. 24-7.  Johnson argues that the City nonetheless did not grant her First Request in a timely manner.  Doc. 26 at 12.  As the City explains, the two-week delay in approving Johnson's accommodation request was in part, due to the fact that it was made during the holiday season.  Doc. 25 at 19 n.5.  Further, the request was processed by a separate department, the EEO, not the department in which she worked.  Doc. 25 at 19 n.5.  Even accepting all Johnson's allegations as true, the delay in granting First Request is not sufficient to show discriminatory intent because Johnson does not allege any facts suggesting discriminatory intent beyond the two-week delay.

The Second Request was denied three days after it was submitted in April 2022, despite the fact that Johnson provided a second doctor's note ("Second Doctor's Note")

recommending remote work.  SAC ¶¶ 24, 25.  However, the workplace mask requirement had been lifted in March and the requested accommodation was therefore determined to be unnecessary.  Docs. 24-3, 24-4.

Later, on May 4, 2022, Johnson supplemented her request with another note from her doctor ("Third Doctor's Note"), which stated that Johnson's disability was "especially troublesome on public transportation" which she used to commute to work and which still required masks.  Doc. 24-6.  On May 20, 2022, Johnson appealed the denial when the City "again increased its requirement" of workplace masks.  SAC ¶ 27.  On May 25, 2022, the City denied the Appeal Request.  *Id.* ¶ 28.  It was not until July 21, 2022, that the City eventually approved Johnson's request.  Doc. 24-7.  Thus, while the City received the Third Doctor's Note on May 4, 2022, emphasizing that there was still a facemask requirement in the public transportation system, it delayed granting Johnson's Appeal for another two months.  SAC ¶ 28; Doc. 24-7.

To be sure, a months-long delay in response to a reasonable accommodation request can amount to a constructive denial.  *See Thompson v. CRF-Cluster Model Program, LLC*, No. 19 Civ 1360 (KPF), 2020 WL 4735300, at *13 (S.D.N.Y. Aug. 14, 2020).  Nonetheless, even a prolonged delay is not dispositive of discriminatory intent.  *See, e.g., id.*; *Logan v. Matveevskii*, 57 F. Supp. 3d 234, 271 (S.D.N.Y. 2014) (declining to infer discriminatory intent from a four-month delay).  Instead, the plaintiff bears the burden to show that "the delay was motivated by the employer's discriminatory intent, as opposed to mere negligence."  *See, e.g., Matveevskii*, 57 F. Supp. 3d at 271; *Saunders v. Queensborough Community College*, No. 13 Civ 5617 (PKC), 2015 WL 5655719, at *7 (E.D.N.Y. Sept. 24, 2015) (declining to find discriminatory intent based on a seven-month delay alone).  Like *Saunders*, Johnson does not point to circumstantial evidence other than the delay in approving her request.  This is insufficient to plausibly infer that the City's delay was motivated by discriminatory intent rather than "mere bureaucratic incompetence or other comparatively benign reasons . . . such as negligent oversight."

*See Marciano v. NBCUniversal Media LLC*, No. 23 Civ 8127 (DEH), 2024 WL 4063743, at *5 (S.D.N.Y. Sept. 5, 2024) (finding a 32-day delay alone insufficient to establish a constructive denial claim).

Johnson additionally challenged the City's failure to engage in any interactive process in originally denying her three requests. Doc. 26 at 11–12. Failure to engage in a good faith interactive process does not form the basis of a claim pursuant to the ADA. *See Sheng v. M&TBank Corp.*, 848 F.3d 78, 86–87 (2d Cir. 2017) (holding that a failure to engage in an interactive process was not dispositive to determine a failure to accommodate). Moreover, Johnson acknowledges that she spoke on the phone with Quinones in connection with her First Request. SAC ¶ 17. Quinones explained that the request was granted because of her doctor's recommendation. *Id.* In connection with her Second Request, the EEO office explained that her request was denied because the mask requirement had been lifted. Doc. 24-4. And, of course, the requested accommodations were ultimately granted. These communications suggest, at a minimum, that the City did consider Johnson's requests and explained the reasons for providing or denying her requests. *See id.*

In sum, Johnson has not adequately alleged the delays in granting her accommodation requests were plausibly caused by discriminatory intent. Accordingly, the City's motion to dismiss Johnson's reasonable accommodation claim is granted.

### C. Hostile Work Environment Claim

"[T]he standard for establishing a hostile work environment is high." *Saunders*, 2015 WL 5655719, at *5. To plausibly plead harassment led to a hostile work environment under the ADA, Plaintiff must allege the workplace was permeated with "discriminatory intimidation, ridicule, and insult" and that it was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *See Vega v. Dep't of Educ.*, No. 18 Civ 6221 (ER), 2020 WL 1505564, at *10 (S.D.N.Y. Mar. 30, 2020). A plaintiff must plausibly allege that she was subjected to

such conduct because of her disability. *See id.* When evaluating the objective abusive work environment, there "is no fixed number of incidents that a plaintiff must endure." *See Bernard v. Care Design N.Y.*, No. 20 Civ 1527 (LJL), 2022 WL 4484556, at *8 (S.D.N.Y. Sept. 27, 2022). Instead, courts must examine "all the circumstances" including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *See, e.g, Saunders*, 2015 WL 5655719, at *5; *Johnstone v. Vill. of Monticello*, 691 F. App'x 657, 658 (2d Cir. 2017). "Isolated incidents typically do not rise to the level of a hostile work environment unless they are of sufficient severity to alter the terms and conditions of employment." *See Saunders*, 2015 WL 5655719, at *5.

Johnson bases her hostile work environment claim on a total of nine actions:

(1) the initial response to Johnson's First Request on December 28, 2021 as "[n]ot recommended";

(2) being forced to use eight of her sick days following the December 28, 2021 response;

(3) Gorman's threat to prohibit her from using flextime on January 11, 2022;

(4) the threat to deduct her pay and cancel her paycheck on April 25, 2022;

(5) the denial of her Second Request without an interactive process, ordering Johnson to return to the office or to face termination on April 29, 2022;

(6) the denial of a promotion offered on August 8, 2022, citing a lack of title;

(7) the verbal chastisement in front of her colleagues on September 14, 2023;

(8) the improper deduction of hours from her timecard on September 18, 2023; and

(9) the attempt to discipline her for being absent during workday while she met with her supervisor on December 13, 2023.

Doc. 26 at 15–16.

As the foregoing makes clear, these claims took place over a period of two years. Two of the allegations, including the initial response to Johnson's First Request as "[n]ot recommended" and the denial of Johnson's Second Request without an interactive process, are analyzed above.

As concerns Gorman's threat to prohibit Johnson from using flextime, the facts show that this was a misunderstanding that was promptly resolved. On January 10, 2022, Johnson's First Request was approved. SAC ¶ 17. On January 11, 2022, Gorman told Johnson that she could not use flextime. *Id.* ¶ 18. However, later that same day Johnson was informed that she *was* permitted to use flextime. Doc. 24-2 at 2.[7]

In April 2022 Johnson received an email which "threatened" to cancel her paycheck because Moore failed to submit her time. SAC ¶ 23; Doc. 26 a 15. At an unspecified later time, Johnson "was able to fix this issue." SAC ¶ 23. Johnson does not allege that there was any delay in receiving her check.

Approximately four months later, in August 2022, Johnson was offered a promotion by another supervisor but the City denied her promotion citing a lack of appropriate title. *Id.* ¶ 29. By itself, the denial of a promotion does not support a hostile work environment claim, which is "a wholly separate cause of action designed to address *other types of* work place behavior, like constant jokes and ridicule or physical intimidation." *See,* e.g., *Magadia v. Napolitano*, No. 06 Civ 14386 (CM), 2009 WL 510739, at *17 (S.D.N.Y. Feb. 26, 2009) (emphasis in original); *Binns-Harty-Bolt v. McDonough*, No. 21 Civ 7276 (PAE) (BCM), 2024 WL 3362409, at *7 (S.D.N.Y. June 21, 2024) ("Plaintiff's complaints concerning . . . failure to promote . . . did not sufficiently suggest 'hostility or offensiveness,' much less that the workplace [was] 'permeated with discriminatory intimidation, ridicule, and insult,' as required to state a hostile work environment claim.")

---

[7] Even if the Court did not consider the NYSDHR's Determination and Order after investigation, it remains the case that Johnson does not allege that she was actually prevented from using flextime. SAC ¶ 18.

Johnson also alleges that more than a year after she was denied a promotion, from September 2023 to December 2023, Gorman verbally chastised her in front of her co-workers; improperly deducted hours from her timecard;[8] and attempted to discipline her for being absent during workday.[9]  SAC ¶ 31–33.  Johnson does not allege that the verbal chastisement was related to her disability; and in any event, these stray remarks are neither "sufficiently severe nor pervasive enough to alter the terms of her employment."  *See*, e.g., *Vega*, 2020 WL 1505564, at \*10; *MacAlister v. Millenium Hotels & Resorts*, No. 17 Civ 6189 (ER), 2018 WL 5886440, at \*7 (S.D.N.Y. Nov. 8, 2018) ("[B]eing excessively criticized, gossip about the plaintiff . . . generally do not constitute hostile work environments.").  Further, Johnson does not explain how Gorman improperly deducted her timecard *because* of her disability.  Rather, Johnson only provides a conclusory statement that Gorman "falsely claim[ed] that [Johnson's entering] was incorrect" and deleted the hours she entered based on Gorman's inaccurate assumption.

In sum, while the Court has determined that the forced use of eight of Johnson's sick days is sufficient to plausibly allege an ADA discrimination claim at this juncture, this allegation by itself, or in combination with the other eight allegations, is insufficient to establish a hostile work environment.  Rather, these allegations are appropriately characterized as "episodic" rather than "continuous and concerted."  *See Saunders*, 2015 WL 5655719, at \*5.  After considering the totality of the evidence, the Court finds that Johnson does not allege enough facts to plausibly allege a hostile work environment claim.

Accordingly, the City's motion to dismiss Johnson's hostile work environment claim is granted.

---

[8] Johnson does not allege that her pay was actually deducted.  SAC ¶ 31.

[9] Johnson does not allege that she was actually disciplined.  SAC ¶ 33.

### D. Retaliation Claim

To sustain a prima facie case of retaliation under the ADA, an employee must show that (1) the employee engaged in a protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *See Dickens v. Hudson Sheraton Corp. LLC*, 167 F.Supp.3d 499, 522 (S.D.N.Y. 2016). A "[p]rotected activity is action taken to protest or oppose statutorily prohibited discrimination." *Stanley v. Phelon*, No. 23 Civ 731, 2024 WL 1453872, at *2 (2d Cir. Apr. 4, 2024). The denial of a requested accommodation itself does not form the basis of a retaliation claim. *See Vora v. New York City Dep't of Educ.*, No. 122 Civ 10891 (PGG) (SDA), 2024 WL 1421131, at *14 (S.D.N.Y. Jan. 24, 2024), report and recommendation adopted, No. 22 Civ 10891 (PGG) (SDA), 2024 WL 1116312 (S.D.N.Y. Mar. 14, 2024).

The Second Circuit holds that "[i]n the context of retaliation, 'adverse employment action' is broader than it is in the context of discrimination." *Napolitano v. Teachers College, Columbia Univ.*, No. 19 Civ 9515 (MKV), 2023 WL 1965690, at *7 (S.D.N.Y. Feb. 13, 2023) (citing *Shultz v. Congregation Shearith Israel of City of New York*, 867 F.3d 298, 309 (2d Cir. 2017)). Refusal to promote, reduction in pay, reprimand, and lesser actions that are "more disruptive than a mere inconvenience or an alteration of job responsibilities." *See Viruet v. City of New York*, No. 16 Civ 8327 (JGK), 2019 WL 1979325, at *11 (S.D.N.Y. May 3, 2019).

When establishing adverse employment action, the key inquiry is whether the effect of the defendant's decision was "materially adverse" that it "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *See Moy v. Perez*, 712 F. App'x 38, 40 (2d Cir. 2017). "The anti-retaliation law 'protects an individual not from all retaliation, but from retaliation that produces an injury or harm.'" *Small v. Garland*, No. 18 Civ 5659 (BCM), 2021 WL 1226979, at *16 (S.D.N.Y. Mar. 31, 2021). Notably, "actions that are trivial harms—i.e., those petty slights or minor

annoyances that often take place at work and that all employees experience" are not actionable.  *See Moy*, 712 F. App'x at 40.

Additionally, to establish a retaliation claim Johnson must provide sufficient details to establish a causal connection between the claimed protected activity and the adverse employment action.  While "temporal proximity" between a protected activity and an adverse employment action can satisfy the causation element of a prima facie case, if a plaintiff exclusively relies on timing to plead causation, the temporal proximity must be "very close."  *See Smith v. New York City Dep't of Educ.*, No. 18 Civ 8545 (PGG), 2019 WL 6307471, at *12 (S.D.N.Y. Nov. 25, 2019).  The Second Circuit has consistently held that more than two months is too long to infer such causation.  *See Gilford v. N.Y.S. Off. of Mental Health*, No. 17 Civ 8033 (JPO), 2020 WL 1529359, at *4 (S.D.N.Y. Mar. 31, 2020).

For the purpose of retaliation determination, the Court finds that Johnson engaged in the following protected activities:  (1) Johnson "complained about the discrimination and failure to accommodate she had been experiencing" to NYCHRA on January 5, 2022; (2) Johnson complained to Quinones on January 10, 2022; (3) Johnson filed a complaint with NYCHRA's EEO office about NYCHRA's discriminatory and retaliatory actions on January 19, 2022; (4) Johnson complained to Moore about the discrimination and retaliation she experienced on February 14, 2022; (5) Johnson filed a complaint with NYSDHR on June 22, 2022; and (6) Johnson filed the instant federal complaint against the City on August 3, 2023.  *See Stanley*, 2024 WL 1453872, at *2 ("[A p]rotected activity is action taken to protest or oppose statutorily prohibited discrimination.").

The City argues that Johnson has not pled an adverse action for her retaliation claim.  Doc. 25 at 17.  Johnson argues that "[a]ll the actions detailed above, occurred after Johnson complained of discrimination and requested reasonable accommodations" were adverse actions.  Doc. 26 at 17.  Here, the Court construes Johnson's reference of

"[a]ll the actions detailed above" as all the nine actions she asserts in her hostile work environment claim described above.  Doc. 26 at 15–16.

In sum, among the nine listed actions, seven actions happened after January 5, 2022 when Johnson first complained about discrimination:

> (1) Gorman's threat to prohibit her from using flextime on January 11, 2022;
>
> (2) the threat to deduct her pay and cancel her paycheck on April 25, 2022;
>
> (3) the denial of her Second Request without an interactive process, ordering Johnson to return to the office or to face termination on April 29, 2022;
>
> (4) the denial of a promotion offered on August 8, 2022, citing a lack of title;
>
> (5) the verbal chastisement in front of her colleagues on September 14, 2023;
>
> (6) the improper deduction of hours from her timecard on September 18, 2023; and
>
> (7) the attempt to discipline her for being absent during workday while she met with her supervisor on December 13, 2023.

*Id.*

The Court acknowledges that the threshold to determine an adverse employment action is lower for a retaliation claim than a discrimination claim.  *See Napolitano*, 2023 WL 1965690, at *7.  Nonetheless, as analyzed, the purported prohibition to use flextime is not actionable as retaliation because she does not allege that she was actually prohibited from using flextime.

Additionally, because Johnson does not allege that her pay was actually deducted or that she was delayed being paid, she does not allege injury sufficient to sustain a retaliation claim.  *See Garland*, 2021 WL 1226979, at *16 ("The anti-retaliation law 'protects an individual not from all retaliation, but from retaliation that produces an injury or harm.'").  Therefore, the City's threat to deduct Johnson's pay and the improper deduction of hours from her timecard were more akin to "minor annoyances."  *See Moy*, 712 F. App'x at 40.  Similarly, the verbal chastisement for an unrelated matter was closer

to a "petty slight[]" than being "materially adverse" enough to reasonably dissuade Johnson from making a charge of discrimination. *Id*.

The denial of Johnson's Second Request for an accommodation on April 29, 2022, does not constitute retaliation either. Here, Johnson solely relies on the timing of the alleged adverse action to support her retaliation claim. *See* Doc. 26 at 17. As analyzed above, Johnson's Second Request was denied on April 29, 2022, more than two months after the last protected activity she asserts on February 14, 2022, when she complained to Moore about the discrimination and retaliation she experienced. SAC ¶¶ 21, 25. No necessary causal connection can be inferred from this discrete incident. *See Gilford*, 2020 WL 1529359, at *4.

The denial of a promotion, however, plausibly indicates the City's retaliation. On June 22, 2022, Johnson filed a complaint with NYSDHR. Doc. 24-1. This filing constitutes a protected activity. *See Stanley*, 2024 WL 1453872, at *2 ("[A p]rotected activity is action taken to protest or oppose statutorily prohibited discrimination."). Seven weeks later, on August 8, 2022, supervisor Kevin Lee offered Johnson a promotion and title increase. However, the City denied Johnson this promotion, allegedly falsely claiming that she did not have the necessary title. SAC ¶ 29. While it is true that Johnson provides scant details regarding the purported promotion, the details she does provide give plausible support to the proposition that she was qualified for a higher position that was denied on a pretext. This denial was arguably sufficient to "dissuade a reasonable worker from making or supporting a charge of discrimination." *See Moy*, 712 F. App'x at 40. Moreover, the temporal proximity between the protected activity and the denial plausibly suggests the City's retaliatory intent. Therefore, the Court finds that Johnson meets the burden to plausibly support a retaliation claim.

Accordingly, the City's motion to dismiss Johnson's retaliatory claim is denied.

### E. The City's Request to Deny Further Amended Complaints

The City requests that Johnson be denied leave to amend the Second Amended Complaint. Doc. 25 at 24. Johnson does not request leave to amend.

Courts are instructed to "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). Motions to amend are ultimately within the discretion of the district court judge, *Foman v. Davis*, 371 U.S. 178, 182 (1962), who may deny leave to amend for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *See Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (citation omitted); *see also Metcalf v. TransPerfect Translations Int'l, Inc.*, No. 19 Civ. 10104 (ER), 2023 WL 2674743, at *3 (S.D.N.Y. Mar. 29, 2023) ("The party opposing the motion to amend bears the burden of proving the claim's futility."). This is a permissive standard since the Federal Rules "accept the principle that the purpose of pleading is to facilitate a proper decision on the merits" of the case. *Conley v. Gibson*, 355 U.S. 41, 48 (1957). Moreover, the Second Circuit has counseled strongly against the dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims. *See Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190–91 (2d Cir. 2015).

Because this is the Court's first opportunity to highlight the precise defects of Johnson's pleading, and it is not yet apparent that another opportunity to amend would be futile, the Court will permit Johnson to replead the dismissed claims.

## IV. CONCLUSION[10]

For the foregoing reasons, the City's motion to dismiss is GRANTED in part and DENIED in part. Specifically, the City's motion is GRANTED as to the reasonable accommodation and hostile work environment claims, and DENIED as to Johnson's discrimination and retaliation claims. The City's request to deny further amended

---

[10] While the parties dispute whether Johnson has identified adequate comparators, the Court's determination of the issues presented does not rely on the purported comparators.

complaints is also DENIED.  Johnson may file an amended complaint, if any, by October 18, 2024.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 23.


It is SO ORDERED.


Dated:  September 27, 2024
        New York, New York

_____
        Edgardo Ramos, U.S.D.J.